IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIQUE POULIOT, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 18 C 6147 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| THE BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, DALE A. | ) | |
| VAN HARLINGEN, DENISE | ) | |
| DONNELLY, individually, CRAIG | ) | |
| HOEFER, individually, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dominique Pouliot filed a twelve-count complaint against defendants the Board of Trustees of the University of Illinois (the "Board"), and Dale J. Van Harlingen, Denise Donnelly, and Craig Hoefer, individually, alleging that the defendants violated 42 U.S.C. § 1983 by discriminating based on age (Count I against the Board; Count III against Van Harlingen, Donnelly, and Hoefer, individually), national origin (Count II against the Board; Count IV against Van Harlingen, Donnelly, and Hoefer, individually), and retaliation for complaining about discrimination (Count XI against the Board; Count XII against Van Harlingen, Donnelly, and Hoefer, individually). Plaintiff's complaint also alleges that the Board violated the Age Discrimination in Employment Act of 1967, ("ADEA") as amended, 29 U.S.C. § 621, et seq. (Count V), Title VII of the Civil Rights Act, ("Title VII") as amended, 42 U.S.C. § 2000e, et seq. (Count VI), the Equal Pay Act, 29 U.S.C. § 206(d) (Count VII), the Fair Labor Standards Act of 1938, ("FLSA") as amended, 29 U.S.C. § 206, et seq. (Count VIII), the Illinois Minimum Wage

Law, 820 ILCS 105/1, et seq. (Count IX), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq. (Count X). Defendants have moved to transfer the case to the United States District Court for the Central District of Illinois ("Central District") pursuant to 28 U.S.C. § 1404(a). For the reasons described below, defendants' motion is granted.

## BACKGROUND

Plaintiff Dominique Pouliot, a Canadian citizen, was employed by the University of Illinois at Urbana-Champaign (the "University") as a postdoctoral research associate from 2011 until September 2016. The Board is an Illinois corporation. Defendant Dr. Dale J. Van Harlingen, Ph.D. is a citizen of Champaign, Illinois, Denise Donnelly is a citizen of Urbana, Illinois, and Craig Hoefer is a citizen of Illinois.

In 2010, plaintiff met Sir Anthony James Leggett, KBE, FRS, a professor and physicist at the University. The following year, plaintiff applied for a position as a postdoctoral research associate with the physics department at the University. Plaintiff was offered the position, conditioned on her ability to obtain a J-1 visa, which she received. During her employment, Professor Leggett was plaintiff's direct supervisor. Plaintiff's office was located on the Urbana-Champaign campus of the University, she attended meetings and seminars on that campus, held regular office hours there, and lived in Champaign, Illinois. Occasionally, plaintiff attended off-campus, academic conferences as part of her job.

Plaintiff's J-1 visa expired on September 18, 2016, and she was terminated that same day. Plaintiff then sought a different type of visa, a TN visa. This process required plaintiff to obtain a letter from the University indicating she would be employed if she secured the visa.

Defendants declined to provide such a letter. Plaintiff alleges defendants' decision not to provide this letter was motivated by discrimination based on age or national origin.

Plaintiff's allegations focus on her observations of hiring practices in the physics department as well as on conversations with University employees, namely defendant Donnelly. Donnelly is a human resources representative for the physics department. Plaintiff alleges that she spoke with Donnelly about her concerns on at least four occasions between 2011 and 2016. Plaintiff requested that Donnelly keep her age secret, as she was concerned because, in her opinion, the other postdoctoral research associates were "substantially younger than she was." Plaintiff alleges that Donnelly's failure to dispel her concerns intimated that age discrimination occurred in the physics department. Plaintiff claims that by 2016, Donnelly was upset by plaintiff's complaints of age discrimination and retaliated by disclosing plaintiff's age to defendant Van Harlingen. Van Harlingen is the head of the physics department and is allegedly responsible for staffing within the physics department. Plaintiff alleges that Van Harlingen's decision not to assist her in applying for a visa was motivated by plaintiff's age.

Professor Leggett, plaintiff's supervisor, wanted plaintiff to continue working for him. After hearing about plaintiff's termination, Professor Leggett met with University counsel, defendant Craig Hoefer, to express his desire that plaintiff continue in her employment. Plaintiff also spoke to Associate Chancellor Katherine Galvin in September of 2016. Plaintiff expressed her concerns of age and national origin discrimination to Galvin and informed Galvin that she was continuing to work for Professor Leggett, without pay. Plaintiff requested reinstatement with pay. This request was denied. Despite not being reinstated, plaintiff continued working for Professor Leggett without pay until October of 2016.

In November of 2016, plaintiff was barred from University facilities, and on October 26, 2017, defendant Hoefer told plaintiff she was to cease all communication with Professor Leggett.

**DISCUSSION**

Defendants have moved to transfer this case to the Central District of Illinois, Urbana Division pursuant to 28 U.S.C. § 1404(a). The court may transfer a case for convenience of the parties and witnesses when it is in the interest of justice. To succeed the movant must show "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." Moore v. Motor Coach Indus., 487 F. Supp. 2d 1003, 1006 (N.D. Ill. 2007). The court considers these factors "in light of all the circumstances of the case." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219–20 (7th Cir. 1986). In the instant case, there is no dispute that venue is proper in both the Northern District of Illinois ("Northern District") and the Central District. Rather, the parties dispute which district is more convenient. The movant bears the burden of proving that the transferee forum is "clearly more convenient." Id.

To determine whether a venue is more convenient, the court considers "the private interests of the parties as well as the public interest of the court." Aldridge v. Forest River, Inc., 436 F. Supp. 2d 959, 960 (N.D. Ill. 2006). The private interest factors include: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties of litigating in the respective forums." Genocide Victims of Krajina v. L-3 Servs., Inc., 804 F. Supp. 2d 814, 823 (N.D. Ill. 2011). The public interest factors include "the court's familiarity

4

with the applicable law and concerns relating to the efficient administration of justice." Aldridge, 436 F. Supp. 2d at 960.

Plaintiff's choice of forum generally is given substantial weight, especially when the chosen forum is plaintiff's home forum. Spread Spectrum Screening LLC v. Eastman Kodak Co., 2010 WL 3516106, at *3 (N.D. Ill. Sept. 1, 2010). Plaintiff's choice of forum, however, is given less weight when the operative facts giving rise to the claim occurred elsewhere. Berol Corp. v. BIC Corp., 2002 WL 1466829, at *4 (N.D. Ill. July 8, 2002). In the instant case, the Northern District is not plaintiff's home forum, and the operative facts, if not all of the facts, occurred in the Central District, not the Northern District. Indeed, plaintiff has no connection to the Northern District. Plaintiff worked in Urbana-Champaign, the alleged discrimination occurred there, and plaintiff lives in Canada. Therefore, the first private factor does not weigh against or in favor of transfer.

The second private factor is the situs of the material events. Defendants correctly assert that any alleged discrimination occurred in the Central District. Plaintiff responds by pointing to her occasional attendance at seminars in the Northern District, and her attempt to obtain a subsequent visa at the United States Citizenship and Immigration Services ("USCIS") office in Chicago. Plaintiff's complaint, however, alleges discrimination based on conduct which occurred only in the Central District. The allegations do not claim the discrimination occurred primarily during attendance at off-campus seminars, nor that the USCIS office discriminated against plaintiff. Thus, the situs of material events is Urbana-Champaign and this factor weighs heavily in favor of transfer.

The third private factor is the relative ease of access to sources of proof. Plaintiff argues that because some of the relevant documents are maintained in Chicago that this factor weighs against transfer. This claim is based on the fact that plaintiff has received documents from the University in the past which she claims were handled by employees in the Board's Chicago office. Defendants contest this fact and state that these documents were provided by an employee on the Urbana-Champaign campus. Regardless, defendants note that any documents will be provided electronically. "Given the easy electronic access to documents, the access to source of proof factor is given less weight than it has in the past." Genocide Victims of Krajina, 804 F. Supp. 2d at 823. Therefore, the ease of access does not weigh against or in favor of transfer.

The fourth private factor is the convenience of the witnesses. This inquiry focuses on "the number of potential witnesses located in the transferor and transferee districts; the expense of transportation and the length of time the witnesses will be absent from their jobs; the nature, quality, and indispensability of the witness testimony; and whether the witnesses can be compelled to testify." Lewis v. Grote Indus., Inc., 841 F. Supp. 2d 1049, 1054 (N.D. Ill. 2012) (quoting Medi USA L.P. v. Jobst Inst., Inc., 791 F. Supp. 208, 211 (N.D. Ill. 1992)). This factor is "often viewed as the most important factor in the transfer balance." Id. (quoting Schwarz v. Nat'l Van Lines, Inc., 317 F. Supp. 2d 829, 836 (N.D. Ill. 2004)). Plaintiff lists several anticipated witnesses who reside in the Northern District, including other postdoctoral research associates and employees of the USCIS office. All of the named defendants, however, and all individuals referenced in the plaintiff's complaint, are located in the Central District. In determining the convenience of the witnesses, "the court must look to the nature and quality of

the witnesses' testimony with respect to the issues of the case." Tingstol Co. v. Rainbow Sales, Inc., 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998). Plaintiff highly underestimates the importance of the testimony of the individuals named and referenced in the complaint and overestimates the importance of the testimony of the anticipated witnesses listed in plaintiff's response to defendant's motion to transfer. Professor Leggett, for instance, was plaintiff's direct supervisor at the time, and his testimony will likely be central to plaintiff's case. Therefore, the fourth private factor weighs heavily in favor of transfer.

The final private factor is the convenience to the parties of litigating in the respective forums. Plaintiff correctly notes that transfer cannot "merely transform[] an inconvenience for one party into an inconvenience for the other party." Law Bulletin Publ'g Co. v. LRP Publ'ns, 992 F. Supp. 1014, 1019 (N.D. Ill. 1998). Plaintiff argues that transferring the case will increase litigation costs because both parties' attorneys would have to travel from Chicago to the Central District for court appearances. Defendants, however, contend that most routine appearances are held telephonically in the Central District. Regardless, the factor is convenience to the parties, not their attorneys. "The convenience and location of counsel have never been accorded weight in a transfer analysis . . . ." Simes v. Jackson Nat'l Life Ins. Co., 2005 WL 2371969, at *3 (N.D. Ill. Sept. 22, 2005) (quoting Hemstreet v. Scan-Optics, Inc., 1990 WL 36703, at *4 (N.D. Ill. Mar. 9, 1990)). This inconvenience is only a factor "if the convenience of counsel bears directly on the cost of litigation . . . ." Id. (quoting Blumenthal v. Mgmt. Assistance, Inc., 480 F. Supp. 470, 474 (N.D. Ill. 1979)). Plaintiff has not offered evidence to show that litigating this case in the Central District would be unduly burdensome. Sunrise Bidders, Inc. v. GoDaddy Group, Inc., 2011 WL 1357516, at *3 (N.D. Ill. Apr. 11, 2011) (quoting Ruppert V.

7

Principal Life Ins. Co., 2007 WL 2025233, at *6 (S.D. Ill. July 9, 2007) ("A party arguing against or for transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his or her finances."). Absent this showing, the court finds that this factor weighs only slightly against transfer.

In summary, two private factors weigh heavily in favor of transfer, one weighs slightly against transfer, and two are neutral. Because two factors, including the most important factor, weigh in favor of transfer, the private factors weigh in favor of transfer.

When evaluating whether transfer is convenient and fair, the court also considers the public interest of the court. This "includes such considerations as the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale." Amoco Oil Co. v. Mobil Oil Corp., 90 F. Supp. 2d 958, 961–62 (N.D. Ill. 2000).

The median number of months for civil cases from filing to trial is 36.3 months in the Northern District and 42.8 months in the Central District. Additionally, the median length of time for disposition of civil cases is 7.5 months in the Northern District and 9 months in the Central District. As such, a civil case is generally more likely to be finalized slightly sooner in the Northern District. The difference in timing, however, is minimal and this factor weighs only slightly against transfer.

The second public factor, the court's familiarity with applicable law, is neutral here since both the Northern District and Central District are equally well-equipped to adjudicate federal and Illinois state law claims.

With respect to the community interest factors, plaintiffs argue that the Northern District has an interest in redressing discrimination that allegedly occurred at the University because it is Illinois' flagship public university. As defendant notes, however, the alleged discrimination occurred on the Urbana-Champaign campus. Thus, the Central District, located in Urbana, has a more significant interest in redressing the alleged discrimination.

The private and public interests weigh in favor of transfer. Therefore, transfer to the Central District of Illinois is granted.

## **CONCLUSION**

For the foregoing reasons, the court grants defendants' motion (Doc. 11) to transfer venue to the Central District of Illinois, Urbana Division.

**ENTER:** March 6, 2019

**Robert W. Gettleman**
**United States District Judge**